IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER C.           :
                         :
     v.                  :     NO. 23-CV-2235
                         :
MARTIN O'MALLEY,         :
Commissioner of Social Security :
                         :

OPINION

SCOTT W. REID                                    DATE: September 18, 2024
UNITED STATES MAGISTRATE JUDGE

Christopher C. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Child's Insurance Survival Benefits ("CIB") under 42 U.S.C. §402(d) and 20 C.F.R. §404.350(a).  He has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that the Request for Review should be denied, and judgment entered in favor of the Commissioner.

I.      *Factual and Procedural Background*

Christopher C. was born on July 8, 1981.  Record at 183.  He left school during the eleventh grade.  Record at 198.  He has no past relevant work, although he worked sporadically as a warehouse laborer and electrician's assistant in his youth.  *Id*.

On October 8, 2004, Christopher C. was found eligible to receive Supplemental Security Income as of July 1, 2004, due to mood disorders.  Record at 465.  On April 15, 2021, he filed the present petition for CIB based on his deceased father's entitlement to benefits, which can be granted to a child over the age of eighteen who can show disability before turning 22.  Record at

183, 20 C.F.R. §404.350(a).  In the present action for CIB, Christopher C. claims disability as of January 1, 2003, on the basis of depression, anxiety, schizophrenia, and a disorder of the knees. Record at 183, 197.

Christopher C.'s application was denied initially and upon reconsideration.  Record at 86 (April 22, 2021), 98 (June 8, 2021).  He then requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  Record at 123.  A hearing was held in this matter on November 9, 2021.  Record at 33.

On August 26, 2022, the ALJ issued a written decision denying benefits.  Record at 16. The Appeals Council denied Christopher C.'s request for review on April 10, 2023, permitting the ALJ's decision to stand as the final decision of the Commissioner of Social Security.  Record at 1.  Christopher C. then filed this action.

II.     *Legal Standards*

    A.     *The Five-Step Sequential Analysis*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the

following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

      B.    *Drug and Alcohol Abuse*

In this case, the rules regarding drug or alcohol abuse are relevant. In a case involving drug or alcohol abuse, an ALJ who finds a claimant disabled must determine whether the claimant's drug or alcohol abuse is a contributing factor material to a determination of disability.

42 U.S.C. §423(d)(2)(C) and §1614(c)(3). If it is material, the claimant is not entitled to receive benefits. *Id*.

Thus, the ALJ must first decide whether drug or alcohol abuse is present. If it is, the ALJ must proceed to determine whether it is material to the finding of disability. The regulations provide:

> The key factor [to be considered] in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

20 C.F.R. §416.935(b). The burden of proving this "key factor" is on the claimant. SSR 13-2p, 2013 WL 621536 at *4 (S.S.A.). Nevertheless, an ALJ's determination of materiality must be based on evidence in the case record that the claimant would not be disabled in the absence of substance abuse. SSR 13-2p at *9.

III.   *The ALJ's Decision and the Claimant's Request for Review*

Because this is a CIB Survivor action, the ALJ had to determine whether Christopher C. was disabled at any time between July 8, 1999, when he turned 18, and July 7, 2003, the last day before he turned 22. Record at 16.

The ALJ determined that, during that relevant period, Christopher C. suffered from the severe impairments of substance abuse (heroin addiction) and an affective disorder. Record at 19. She determined that, including the substance abuse, Christopher C. was disabled during that period, meeting the criteria of Listed Impairment 12.04, which pertains to affective disorders. *Id*.

Nevertheless, the ALJ found that Christopher C. was not entitled to benefits because his substance abuse was material to his disability. Record at 22-28. She found that, if Christopher C. stopped his substance use, he would not meet a listed impairment. Record at 22. She found

4

that, in the absence of substance abuse, Christopher C. would have had an RFC permitting work at all exertional levels, with these additional non-exertional limitations:

> [H]e could perform simple, routine tasks and make simple work-related decisions. The claimant could understand, remember, and carry out simple instructions and make simple work-related decisions. He could tolerate a low level of work pressure, which I define as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, or teamwork in completing job tasks. He could work at a consistent pace throughout the workday, but not at a production rate pace where each task must be completed within a strict time deadline. He could sustain an ordinary routine without special supervision and can tolerate occasional changes in the work setting. He could tolerate occasional interaction with coworkers, supervisors, and the public; however, he was able to participate and cooperate with supervisors and coworkers during the training period for unskilled work.

Record at 23-4.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that, if Christopher C. was not abusing drugs in the relevant time period, he would have been able to work in such jobs as a collator operator, routing clerk, or mail clerk. Record at 27. She concluded, therefore, that Christopher C. was not disabled in the relevant period. Record at 28.

In his Request for Review, Christopher C. argues that the ALJ erred in finding that he was not disabled by his mental impairments before he turned 22. First, he argues – rather strangely – that, since the Agency has already found him disabled as of July 1, 2004, it is collaterally estopped from finding him not to be disabled as of July 7, 2003. Secondly, he argues that the available evidence did not support the conclusion that his substance abuse was material to his disability.

IV.   *Discussion*

    A.   *Collateral Estoppel*

There is no legal basis for finding the Agency collaterally estopped from finding that Christopher C. was not disabled in one time period, even though he was disabled in a different time period.  The authority cited by Christopher C., 20 C.F.R. §404.950, speaks of "issues previously decided."  A determination of whether Christopher C. was disabled between July 8, 1999 and July 1, 2003, obviously does not present the same issue as whether he was disabled as of July 1, 2004.

As the Commissioner points out, courts have upheld findings of no disability even where a claimant was previously found to have been disabled as of the very next day.  *See Cunningham v. Commissioner of Soc. Sec.*, 507 F. App'x 111, 120 (3d Cir. 2019) (not precedential); *Soto v. Commissioner of Soc. Sec.*, Civ. A. 17-89-KM, 2018 WL 355138 at *7 (D.N.J. Jan. 10, 2018).  As the *Soto* court expressed it:  "Medical conditions change."  *Id*.

    B.   *Substantial Evidence Supports the ALJ's Decision*

The ALJ and Christopher C. agree that the evidence from the relevant time period in this case is "sparse."  Record at 21.  Nevertheless, the ALJ was able to discern sufficient evidence to support her conclusion that Christopher C.'s substance abuse was material to the disabling nature of his mental impairments.

The earliest records provided are from an emergency room visit on March 21, 2002, where a 20-year-old Christopher C. sought information on detoxification to treat a heroin addiction.  Record at 255.  He had been in a detox program at St. Joseph's Hospital and ultimately decided to contact his counselor there, without waiting for a physical examination.  *Id*.

The ALJ noted in her decision that, upon evaluation in the emergency room, Christopher C. was observed to be awake, alert, and oriented, with cooperative behavior. Record at 20, 254. She also noted that he described himself as able to perform all self-care, and to cook, clean, and shop, independently. Record at 21, 255. Christopher C. argues that "nothing in this evidence suggest that [his] mental impairments apart from substance abuse were not disabling," yet it is obviously significant that he neither sought treatment for, nor showed any obvious signs of, severe mental illness.

The only other records reflecting treatment for non-physical ailments in the relevant time period are from ACT (Achievement Through Counseling and Treatment), which is a rehabilitation program. October 2, 2003, intake records reflect that Christopher C. had been addicted to heroin for several years at that time, and was using three bags per day. Record at 403. As the ALJ noted, as late as February 2, 2004, Christopher C.'s sole diagnosis was opiate addiction, for which he was treated with methadone. Record at 21, 401-2. He was said to be "doing well." Record at 21, 402.

Thus, as the ALJ noted, Christopher C.'s sole diagnosis in the relevant period was substance addiction. Record at 22. It was not until April 26, 2004, that his primary care physician added a diagnosis of major depression. Record at 22, 268. On May 11, 2004, Norman Lamonsoff, MD, diagnosed "severe bipolar disorder with suicidal and psychotic tendencies," as well as post-traumatic stress syndrome, but that was ten months after the end of the relevant period. Record at 395. Even then, in a June 29, 2004, treatment note, Dr. Lamonsoff called Christopher C. "stable" and observed that he was "not suicidal or psychotic," which the ALJ understood to "indicate stability with treatment." Record at 22, 397.[1]

---

[1] The ALJ also cites Christopher C.'s testimony that he was able to participate in a GED program while incarcerated for three months in 2003. Record at 22. It is unclear whether the GED program was during the 2003 incarceration,

Christopher C. points to the opinion of John Chiampi, Ph.D., a non-examining state mental health expert, who reviewed his records on October 12, 2004, in connection with his SSI case, and determined that he met both the listing for substance abuse disorder, and the listing for affective disorders. Record at 470. However, this does not help Christopher C. here. Dr. Chiampi did not have before him the records pertaining to the time period at issue here, as they were obtained only in the present CIB case. The earliest record he saw was the October 2, 2003, ACT intake form. Record at 494. Further, as the ALJ pointed out, Dr. Chiampi did not discuss materiality, so his opinion is of limited use in this case. Record at 26-7.

Clearly, therefore, substantial evidence from the relevant time period supports the ALJ's conclusion that Christopher C. was disabled, but that substance use was material to his disability.[2]

Christopher C. states that SSR 13-2p "explicitly contemplates an ALJ relying upon a medical expert opinion" in determining materiality. An explicit medical opinion on materiality would certainly be useful evidence. However, even Christopher C. does not claim that it is required. The Court of Appeals for the Third Circuit has explicitly rejected such an argument, although in a non-precedential case. *McGill*, *supra*, at 52-3 ("McGill also argues that any determination that DAA [drug/alcohol abuse] is material to the finding of disability must be based on expert psychiatric opinion evidence. … She cites no relevant authority in support of her

---

or a later incarceration in 2017. Record at 50. I note, however, that Christopher C. has not objected to the ALJ's version of events.

[2] It could also be noted, as a general matter, that there is no evidence of mental health treatment in this period unconnected to substance abuse. A number of courts have held that this is relevant in a materiality evaluation. In *McGill v. Commissioner of Soc. Sec.*, for instance, the Court of Appeals for the Third Circuit upheld a materiality finding where "the vast majority of McGill's hospital visits involved drug overdoses, drug-seeking behavior, or both," while "[i]n contrast," there was "little if any evidence of severe depression or anxiety independent" of substance abuse. 288 F. App'x 50 at 52-3. Similarly, in *Friend v. Astrue*, 788 F. Supp.2d 365, 368 (E.D. Pa. Apr. 18, 2011), the Honorable Robert F. Kelly approved an ALJ's finding that materiality was "evidenced by the absence of any hospitalizations without drug/alcohol being involved."

position, and our research has failed to discover any such requirement in §423(d)(2)(C) or its implementing regulations"). It is sufficient that substantial evidence from the case record supports the determination. SSR 13-2p at *7 ("we make this finding based on the evidence in the claimant's case record").

V.   *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be denied, and judgment entered in favor of the Defendant.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE